IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS JAMES,

                Plaintiff,

v.                                                             OPINION and ORDER

HEATHER BUTZKE,                                                21-cv-575-wmc

                Defendant.

---

Prisoner Carlos James claims that defendant Heather Butzke, a correctional officer at Kettle Moraine Correctional Institution ("KMCI") accused him of being a "snitch," thus exposing him to threats and harassment by other inmates in violation of his rights under the Eighth Amendment and Wisconsin negligence law. Before the court is defendant's motion for summary judgment. The court will grant the motion on James' Eighth Amendment claim because, even viewing the evidence in a light most favorable to James, no reasonable jury could find that defendant violated his constitutional rights. In the absence of a viable federal claim the court will also decline to exercise supplemental jurisdiction over James' negligence claim, which will be dismissed without prejudice.

UNDISPUTED FACTS[1]

On June 12, 2021, James was serving a three-day, 24-hour room confinement at KMCI following disposition of a previous conduct report. The conditions of his confinement included that he was not permitted to obtain or possess hot water, either personally or through another

---

[1] Except where noted, the following facts are drawn in the light most favorable to plaintiff, as the nonmoving party, from defendant's proposed findings of facts and plaintiff's responses.

inmate.  However, during his confinement, Correctional Officer Butzke observed James exit the bathroom with a cup of coffee, prompting her to ask what he was doing in the bathroom with the cup of coffee, to which he replied, "hot water."  Since this meant James had acted in direct violation of his 24-hour room confinement, as well as a direct violation of the bathroom rules prohibiting inmates from bringing cups, bowls, or food into the bathroom, Officer Butzke asked James Butzke issued James a conduct report for disobeying orders.

As per KMCI's policy, Butzke also notified a sergeant of her issuance of a conduct report, and the sergeant called James to the officer's station.  James stated that "the ticket was not truthful" because he did not actually get hot water from the bathroom.  Rather, James explained he already had the coffee made when he entered the bathroom.  The sergeant and Butzke then reviewed the security footage showing that:  James actually brought a cup from his cell, handed it to another inmate, who then heated up the coffee in the unit's microwave, and left it in the bathroom for James to pick up.  After reviewing this footage, Butzke next called the other inmate to the officer's station and told him that she knew he had heated up coffee for James, which violated policy because he was then on 24-hour room confinement.  Further, according to James, Butzke told the inmate that it was James who had "thrown him under the bus."

Butzke denies saying this, but agrees she gave the other inmate a warning about the restrictions of room confinement.  The other inmate then left the officer's station and allegedly informed several inmates that James had "snitched" on him.  When Officer Butzke delivered a copy of James's conduct report to his cell, she also allegedly loudly announced, "Thanks for telling me, now you got someone else in trouble," although again Butzke denies saying this.

2

After the incident, other inmates accused James of being a snitch and subjected him to insults and verbal abuse. More specifically, although he was not seriously harmed physically by any other inmate because of the snitch rumor, James claims that he was repeatedly mocked and harassed by other inmates, and once in August 2021, an inmate who was teasing him also intentionally, "physically bumped" into him. In addition, James claims to have suffered anxiety attacks because of the comments from other inmates, for which he sought both psychological services and a transfer to a different institution.

OPINION

The Eighth Amendment of the U.S. Constitution mandates that prison officials "take reasonable measures to guarantee the safety of the inmates themselves," *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984), which includes a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Moore v. W. Illinois Corr. Ctr.*, 89 F.4th 582, 590–91 (7th Cir. 2023). "Prison officials who recklessly expose a prisoner to a substantial risk of a serious physical injury violate his Eighth Amendment rights." *Smith v. Peters*, 631 F.3d 418, 421 (7th Cir. 2011).

Plaintiff claims that defendant's comments to an inmate that plaintiff "threw him under the bus," as well as her comments within earshot of yet other inmates that plaintiff "got someone else in trouble" -- deliberately exposed him to a substantial risk of serious harm in violation of his constitutional rights. To overcome defendant's motion for summary judgment on this Eighth Amendment claim, plaintiff must provide evidence from which a reasonable jury could conclude defendant both knew of and deliberately disregarded a substantial risk of serious harm to plaintiff's health or safety. *See Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th

Cir. 2015). Said another way, plaintiff must show: (1) defendant was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed; and (2) she must also have drawn that inference. *Farmer*, 511 U.S. at 837.

As a threshold matter, defendant argues that plaintiff's experience of non-physical jeering, harassing statements and a shoving incident do not qualify as "serious harm" sufficient to sustain a constitutional claim. *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (holding that "trivial" injuries consisting of "minor scratches" were insufficient to sustain Eighth Amendment claim). Plaintiff responds that the psychological injuries he suffered, including anxiety and difficulty sleeping, are sufficient to maintain his constitutional claim. The court need not resolve this dispute, however, because plaintiff's Eighth Amendment claim fails on the subjective element of his claim: he cannot show that defendant acted with deliberate indifference to a substantial risk of serious harm.

Plaintiff argues that defendant knew, or should have known, that outing him as a "snitch" to other inmates on his unit would place him at a substantial risk of serious harm, citing several cases in support. But all are distinguishable, as each involved substantially more serious risks than present in this case. For example, plaintiff cites *Leary v. Livingston Cnty.*, 528 F.3d 438, 442 (6th Cir. 2008), a case in which a correctional officer told other inmates that the plaintiff had been charged with raping a nine-year old girl, while at the same time acknowledging the serious risk of harm that the plaintiff faced once other inmates learned of the charges. *Id.* at 442 (officer told plaintiff "to keep his mouth shut about his charges … [f]or his own safety" because he "fear[ed that someone might] assault[ ] him [for] a charge like that.") Thus, in *Leavy*, the officer's own words allowed a jury to find that he was subjectively "aware of facts from which the inference could be drawn that a substantial risk of serious harm

4

exist[ed]" *and* that he "dr[ew] the inference." *Farmer*, 511 U.S. at 837.  Specifically, a jury could readily find the officer knew that Leary would need protection from other inmates if information that he was a child molester leaked, but he persisted in telling other inmates about the charges against him despite that knowledge.

Plaintiff also cites:  *Snider vs. Dylag*, 188 F.3d 51, 55 (2nd Cir. 1999), a case in which a corrections officer declared "open season" on an inmate, which led to the inmate being beaten by other inmates; *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001), a case in which officers failed to protect an inmate despite knowing that he had asked for protective custody and was housed with rival gang members who were intoxicated; and *Velez v. Johnson*, 395 F.3d 732, 734–36 (7th Cir. 2005), a case in which an officer ignored plaintiff's pushing an emergency call button in his jail cell after his cellmate had threatened him.  All of these cases present far more serious situations than present here:  defendant did not out plaintiff has a child sex offender, encourage other inmates to attack him, house him with dangerous inmates with whom he had a known rivalry, or ignore his requests for protection after a credible threat.[2] Moreover, despite plaintiff's interpretation of the incident, he never actually alleged nor offered evidence at summary judgment that defendant called him a "snitch" in front of others.  Rather, he concedes that, at most, defendant alerted other inmates that plaintiff admitted another inmate helped him heat up his coffee.  Finally, plaintiff can point to nothing in the record from which a jury could reasonably infer that defendant *believed* these alleged statements about the coffee incident would place plaintiff at a substantial risk of serious harm.  This is particularly

---

[2] Plaintiff was denied leave to proceed on any claim that defendant or any other prison official failed to protect him from harassment or other injury after the coffee incident because he failed to allege that he told defendant or anyone else that he was being harassed or threatened.  (Dkt. #8) (screening order).

true because, as plaintiff concedes, the inmate who heated up the coffee was only given a *warning* against assisting someone on room confinement. Plaintiff has submitted no evidence of any prior animosity between himself and the other inmate or that inmates on the Veteran's Unit where he was housed were prone to violence against each other over something that would cause, at most, a conversation and warning between a guard and an inmate.

Certainly, accepting plaintiff's version of events as true, defendant should have been more careful in accusing plaintiff of betraying the trust of another inmate, because she not only could have expected that such a betrayal could cause tension among inmates on the unit, but also work to deter other inmates from admitting anything to her in confidence. However, the relevant inquiry under the Eighth Amendment is not whether defendant *should* have known about the negative impacts on her ability to obtain confidential information from inmates, risk of creating tension between inmates, or even a specific risk to plaintiff's safety, but rather whether she *did* know of a substantial risk of serious harm. *See Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008) ("the inquiry is not whether individual officers *should have* known about risks to [plaintiff's] safety, but rather whether they *did* know of such risks") (emphasis in original).) Even though a defendant's knowledge of risk can sometimes be inferred, such an inference is inappropriate under the circumstances here, where plaintiff's alleged betrayal was trivial, the inmate helper was not punished, plaintiff submitted no evidence about tension or violence on the unit, and there was no serious injury to plaintiff. Therefore, defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim.

As noted, plaintiff also brought a negligence claim against defendant for disclosing this same information. This court only has supplemental jurisdiction over that claim under 28 U.S.C. §1367(a), which permits a federal district court to hear a state-law claim if it is related

to a federal claim in the same action, but absent unusual circumstances, district courts are to relinquish supplemental jurisdiction over state-law claims if all federal claims have been resolved before trial. *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 352 (7th Cir. 2019). Nothing in this case suggests unusual circumstances that would justify retaining jurisdiction over plaintiff's state-law claim, the court will decline to do so; rather, relinquishing jurisdiction appears particularly appropriate here, since a disputed, threshold issue concerns whether plaintiff complied with the state's notice of claim requirements to pursue a negligence claim under Wisconsin common law, and plaintiff may refile his claim in state court, subject to any applicable statute of limitations.

ORDER

IT IS ORDERED that:

1. Defendant Heather Butzke's motion for summary judgment (dkt. #23) is GRANTED as to plaintiff's Eighth Amendment claim.

2. Defendant's motion to stay case deadlines (dkt. #45) is DENIED AS MOOT.

3. The court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claim, which is DISMISSED without prejudice.

4. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 18th day of March, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge